IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| MARLYS SELL,<br><br>             Plaintiff,<br><br>vs.<br><br>AMERICAN FAMILY MUTUAL<br>INSURANCE COMPANY,<br><br>             Defendant. | CV-09-135-BLG-RFC-CSO<br><br>**FINDINGS AND<br>RECOMMENDATIONS<br>OF UNITED STATES<br>MAGISTRATE JUDGE<br>ON DEFENDANT'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT** |

Plaintiff Marlys Sell ("Sell") initiated this action in Montana state court against Defendant American Family Mutual Insurance Company ("American Family"). *Cmplt. (Court Doc. 4).* Sell alleges violations of the Montana Unfair Trade Practices Act ("UTPA"), MCA §§ 33-18-201 and 33-18-242, stemming from American Family's handling of Sell's claim against an American Family insurance policyholder. *Id.* American Family removed the action to this Court. *Notice of Removal (Court Doc. 1).*

Now pending is American Family's Motion for Summary Judgment as to Count II. *Court Doc. 21.* Having reviewed the record, together with the parties' arguments in support of their positions, the Court

makes the findings and recommendations discussed below.

I.   **<u>BACKGROUND</u>**

Sell and Matthew D'hont ("D'hont") were involved in an automobile accident on November 27, 2005, in Billings, Montana, when D'hont ran a red light and struck Sell's vehicle. *Sched. Order (Court Doc. 13), ¶ 3 (Stipulations) at ¶ (a).* At the time of the accident, D'hont was insured by American Family with liability limits of $100,000 per person. *Id. at ¶ (b).* D'hont's negligence caused the accident. *Id. at ¶ (c).* Sell was not contributorily negligent. *Id. at ¶ (d).* Sell was injured as a result of the accident. *Id. at ¶ (e).*

In a letter dated September 20, 2007, Sell's former counsel, Rendy Lemke ("Lemke"), demanded from American Family $175,000 to settle the matter. *Sell's Stmt. of Genuine Issues (Court Doc. 29) at ¶ 1 (citing Exs. A1-A8).* Lemke requested that American Family respond by October 11, 2007. *Id. at Sell 0016* ("We ask that you have your check and release into our office no later than October 11, 2007.").

In a letter dated October 16, 2007, Lemke wrote "we have agreed to extend our demand for policy limits for two additional weeks, allowing a response up to October 30th, by 4:30 p.m. Mountain Standard Time."

*Id. at Ex. B* (emphasis omitted).

On October 30, 2007, an American Family claim adjuster spoke with Lemke's paralegal and advised that the insurance policy's bodily injury limits were "100/300." *Id. at Ex. C.*

In a letter dated November 26, 2007, Lemke sent a letter to American Family stating:

> This is our last effort to amicably resolve this claim for your policy limits. We are extending this settlement offer up until December 12, 2007. Please send your check and release into our office so that this matter can be resolved amicably.

*Id. at Ex. D.*

On December 12, 2007, Lemke's office communicated with American Family's claim adjuster who noted that Lemke's office "indicated they expect an offer of policy limits" that day. *Id. at Ex. E.*

On December 17, 2007, Lemke left a telephone message with American Family's claim adjuster advising that if American Family did "not respond with policy limits of $100,000" in two days, Sell would file a lawsuit and Sell, at that point, would "not consider resolving [the] claim." *Id. at Ex. F.*

Lemke sent a letter dated December 17, 2007, to American Family

stating that American Family had failed timely to respond to Sell's settlement demand and had given up its "opportunity to resolve this claim within your insured's policy limit." *Id. at Ex. G.*

In a letter to Lemke dated January 10, 2008, American Family, inter alia, offered $3,500 to settle all of Sell's claims against it "in exchange for a full release." *Id. at Ex. H.*

On January 24, 2008, Sell filed suit ("underlying case") against D'hont in state court. *Deft's Stmt. of Uncontroverted Facts (Court Doc. 23) at ¶ 9.*

From April 29, 2008, to May 13, 2008, American Family issued three checks totaling $30,091.87 for advance payment of Sell's medical bills. *Id. at ¶¶ 12-14.*

In a letter dated July 11, 2008, Sell made a settlement demand of $400,000. *Court Doc. 29 at Ex. I, p. 5.* The letter indicated that Sell "would appreciate a response to this demand within thirty-days (sic)." *Id.*

In a letter dated August 25, 2008, Sell withdrew her offer to settle all claims for $400,000 and requested policy limits of $100,000. Sell also advised that she would not provide a release, would "continue to litigate

-4-

her claim for damages incurred as a result of the automobile accident[,]" and expressly reserved "her right to file a third-party bad faith claim once the underlying matter is concluded." *Id. at Ex. J.*

On August 27, 2008, Sell extended the deadline for American Family to respond to her settlement demand for another twenty days. *Id. at Ex. K.*

On January 27, 2009, American Family issued a fourth check in the amount of $69,908.13 for the remaining policy limits. *Id. at ¶ 18.*

On April 17, 2009, D'hont consented to judgment in the underlying case in the amount of $250,000 in Sell's favor and assigned all first-party rights under the American Family policy to Sell. In exchange, Sell entered into a covenant not to execute against D'hont personally. *Court Doc. 4 at ¶ 14; Court Doc. 23 at ¶ 19.*

On June 22, 2009, the state court held a hearing regarding the reasonableness of the stipulated judgment. Judge Watters determined that the judgment was reasonable and on July 13, 2009, judgment was entered against D'hont in the amount of $250,000. *Court Doc. 4 at ¶ 15; Court Doc. 5 at ¶ 15.*

On September 23, 2009, Sell filed this action against American

Family.  *Court Doc. 4.*  In Count I of her Complaint, Sell asserts a third-party bad faith claim.  *Id. at ¶¶ 16-22.*  In Count II, she asserts, as D'hont's assignee, a first-party bad faith claim.  *Id. at ¶¶ 23-27.*  In Count III, Sell claims punitive damages.  *Id. at ¶¶ 28-30.*  She also seeks compensatory damages.  *Id. at 5 (prayer for relief).*

American Family's summary judgment motion relates only to Count II's first-party bad faith claim.  *Deft's Mtn. for Summary Judgment as to Count II (Court Doc. 21).*

## II.  <u>PARTIES' ARGUMENTS</u>

American Family advances three principal arguments.  First, American Family argues that Montana law precludes a first-party bad faith claim against an insurance company.  *Deft's Br. in Support of Mtn. for Summary Judgment as to Count II (Court Doc. 22) at 5.*  It argues that MCA § 33-18-242(3) expressly provides that "[a]n insured may not bring an action for bad faith in connection with the handling of an insurance claim."  Thus, it argues, as the assignee of D'hont's first-party bad faith claim, Sell actually has no first-party bad faith rights.  Rather, American Family argues, "[i]f rights were assigned, they must be contract rights or statutory rights."  *Id.*

Second, American Family argues that no first-party claim is available to Sell because she failed to satisfy a prerequisite for making such a claim. *Id. at 5-9.* Specifically, American Family argues that no evidence exists that Sell ever offered to settle the underlying case within policy limits. *Id.* This failure to offer to settle within policy limits, it argues, is fatal to Sell's first-party claim. *Id.*

Third, American Family argues that even if it had a duty to settle within policy limits, Sell's first-party claim against it fails. It argues that Sell, by entering a covenant not to execute on the stipulated judgment it obtained against D'hont, effectively released D'hont and thus released American Family. *Id. at 9-13.* Because it tendered its policy limits and obtained this release, American Family argues, Sell has no actionable first-party claim against it. *Id.*

American Family also argues that Sell's first-party claim fails because: (1) in light of the covenant not to execute, D'hont was not exposed to an excess judgment, *id. at 10-11*; (2) Sell, as D'hont's assignee, received nothing by the assignment because "[a] judgment combined with a covenant not to execute is worthless and ... Sell received nothing from D'hont of any value worth pursuing[,]" *id. at 11-*

-7-

*12*; and (3) "D'hont is not, by terms of his agreement with Sell, 'legally liable' for the judgment, [thus] the policy [that D'hont had with American Family] would not cover the judgment[,]" *id. at 12-13*.

In response, Sell disputes each American Family argument.  First, Sell argues that, as D'hont's assignee, she "has properly pled independent first party statutory causes of action under the [UTPA]." *Sell's Resp. Br. (Court Doc. 26) at 7-11*.  She argues that: (1) labeling Count II of her Complaint "First Party Bad Faith" does not control the specific pleadings, *id. at 8*; (2) MCA § 33-18-242(3) includes not only the statement that "[a]n insured may not bring an action for bad faith in connection with the handling of an insurance claim[,]" but also provides three independent causes of action against an insurer for the handling of a claim in violation of the UTPA, which is what Sell asserts in this action, *id. at 8-10*; and (3) Montana case law has long recognized statutory first-party claims such as those Sell asserts here, *id. at 10-11*.

Second, Sell disputes American Family's argument that no evidence exists that Sell ever offered to settle the underlying claim within policy limits.  She argues that the record contains evidence of "numerous offers to settle the underlying action within policy limits and

provide a release to [American Family's] insured, [ ] D'hont." *Id. at 11.*
In support of her argument, Sell references several instances in the
record of her counsel's communications with American Family in which
Sell offered to "settle for policy limits and provide a release." *Id. at 13.*
American Family's refusal to settle for policy limits, Sell argues, exposed
D'hont to an excess judgment. *Id. at 13-14.*

Third, Sell disputes American Family's argument that her
covenant not to execute on her judgment against D'hont is the functional
equivalent of a release of D'hont and American Family. *Id. at 14-20.*
She argues that "[t]he majority rule is that an assignment of a bad faith
claim coupled with a covenant not to execute is not a release." *Id. at 14.*
Rather, Sell argues, "[t]he majority [of courts] considers a covenant not
to execute 'merely a contract and not a release.'" *Id. at 15.* She notes
that "[c]ovenants not to execute are different from releases, as the legal
liability remains in force against those who have covenants, whereas a
release represents 'total freedom from liability.'" *Id. (quoting Gray v.
Grain Dealers Mut. Ins. Co., 871 F.2d 1128, 1133 (D.C. Cir. 1989)).*

Also, Sell disputes American Family's other arguments, noting:  (1)
American Family's argument that D'hont was not exposed to an excess

judgment fails because "a majority of jurisdictions adhere to the 'judgment rule' where mere entry of a final judgment against the insured constitutes actual damages or exposure ... when an insurer breaches their duty to settle[,]" *id. at 16-17*; (2) American Family's argument that Sell, as D'hont's assignee, received nothing from the assignment fails because "the majority of cases hold[s that] an injured plaintiff, the insured's assignee, can recover actual damages for the excess judgment from an insurer despite the existence of a covenant not to execute[,]" *id. at 17-19*; and (3) American Family's argument that D'hont, by the terms of his agreement with Sell, is not legally liable for the judgment fails because the insurance policy D'hont has with American Family does not define "legally liable" and any ambiguity in the policy must be construed in favor of the insured, *id. at 19-20*.

    In reply, American Family argues: (1) it "does not concede that in Montana there is ... a duty to leverage a release from the insured party when to do so may be itself a violation of the UTPA, *Deft's Reply Br. (Court Doc. 30) at 2*; (2) the evidence of record demonstrates "most unequivocally" that Sell never offered to settle for policy limits and release D'hont, *id. at 2-6*; and (3) the cases upon which Sell relies are

distinguishable and Sell has offered no authority from Montana or otherwise that supports her position, *id. at 7-13*.

## III.   <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Wilderness Development, LLC v. Hash, 606 F. Supp. 2d 1275, 1279 (D. Mont. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact finder to return a verdict for the nonmoving party. <u>Id</u>.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986) (cited in Wilderness Development, 606 F. Supp. 2d at 1279). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

moving party.  Id.  But on an issue for which the opposing party will

have the burden of proof at trial, the moving party need only point out

"that there is an absence of evidence to support the nonmoving party's

case."  Id.

Once the moving party meets its initial burden, the nonmoving

party must go beyond the pleadings and, by its own affidavits or

discovery, "set out specific facts showing a genuine issue for trial."  Fed.

R. Civ. P. 56(e).  If the nonmoving party fails to make this showing "the

moving party is entitled to judgment as a matter of law."  Celotex Corp.,

477 U.S. at 323.  "In considering a motion for summary judgment, the

court may not weigh the evidence or make credibility determinations,

and is required to draw all inferences in a light most favorable to the

non-moving party."  Wilderness Development, 606 F. Supp. 2d at 1279

(citing Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997) (abrogated

on other grounds as noted in Shakur v. Schriro, 514 F.3d 878, 884-85 (9th

Cir. 2008)).  While summary judgment is not perceived as a disfavored

procedural shortcut, Celotex Corp., 477 U.S. at 323, it should never be

used "as a substitute for trial on the facts and law." Cox v. English-

American Underwriters, 245 F.2d 330, 333 (9th Cir. 1957).

IV. **DISCUSSION**

A. **American Family's Argument that Montana Law Precludes a First-Party Bad Faith Claim**

As noted, American Family argues that the Court should dismiss Count II based on Montana law precluding a first-party "bad faith" claim for insurance claim handling. The Court concludes that American Family is correct, but only as to a portion of Sell's claim.

American Family bases its argument, in part, on Sell's labeling Count II "First Party Bad Faith." The label affixed to a claim does not control the substance of the claim. Rather, the substance of what is pled controls. *See, e.g., Phillips v. Audio Active Ltd., 494 F.3d 378, 388-89 (2d Cir. 2007)* (courts examine substance of claims, "shorn of their labels[,]" in ascertaining applicability of contractual provision to particular claims); *Jarbough v. Attorney General of the United States, 483 F.3d 184, 189 (3d Cir. 2007)* (in immigration case, noting "[w]e are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim. To do otherwise would elevate form over substance ...."); and *M.A. DeAtley Construction v. United States, 71 Fed. Cl. 370, 377 (Fed. Cl. 2006)*

(noting "the court is not inclined to dismiss a cognizable claim based solely on an improper label where its substance is correct").

American Family also bases its argument on the last sentence of MCA § 33-18-242(3).  Before addressing this particular provision, however, the Court first must examine Sell's allegations.  In doing so, the Court concludes that Count II of Sell's Complaint includes two claims – one of which is precluded under Montana law, and another which is not.

The first claim, which Sell includes in two related paragraphs in her Complaint, provides as follows:

24.  Defendant American Family failed to protect the interests of its insured D'hont by failing to tender its policy limits in exchange for a release of its insured and thereby exposed him to an excess judgment.

25.  By failing to protect their insured against an excess judgment, Defendant American Family violated the Montana [UTPA], as set forth at § 33-18-201 and § 33-18-242, M.C.A. (2009), in the following respects:

a.  By refusing to pay claims without conducting a reasonable investigation based upon all available information; and

b.  By neglecting to attempt in good faith to effectuate prompt, fair, and equitable settlements of Plaintiff's claims in which liability was reasonably clear.

-14-

Court Doc. 4 at ¶¶ 24 and 25.

Montana law allows this type of claim.  MCA § 33-18-242(3)

provides, in pertinent part:

> An insured who has suffered damages as a result of the
> handling of an insurance claim may bring an action against
> the insurer for breach of the insurance contract, for fraud, or
> pursuant to this section, but not under any other theory or
> cause of action.

The phrase "pursuant to this section" contemplates inclusion of the

language in MCA § 33-18-242(1), which provides:

> An insured or a third-party claimant has an independent
> cause of action against an insurer for actual damages caused
> by the insurer's violation of subsection (1), (4), (5), (6), (9), or
> (13) of 33-18-201.

MCA § 33-18-201 sets out the specific practices prohibited under

the UTPA and provides that an insurer

> may not, with such frequency as to indicate a general
> business practice, do any of the following:
>
> *      *      *
>
> (4) refuse to pay claims without conducting a
> reasonable investigation based upon all available
> information;
>
> *      *      *
>
> (6) neglect to attempt in good faith to effectuate

-15-

> prompt, fair, and equitable settlements of claims in
> which liability has become reasonably clear[.]

Sell's allegations stated in paragraphs 24 and 25 of her Complaint,

taken together, fall within these expressly-allowed causes of action.

Thus, American Family's summary judgment motion should be denied

with respect to these claims.

Sell's second of the two claims asserted in Count II, which she

alleges in paragraph 26, provides that:

> American Family's failure to settle within policy limits and
> obtain a release for their insured, when liability was
> reasonably clear, constitutes bad faith as found in Montana
> Common Law.

Court Doc. 4 at ¶ 26.

Montana law does not allow this type of claim.  In addition to the

language of MCA § 33-18-242(3) set forth above, the final sentence of the

statute, upon which American Family relies, provides:

> An insured may not bring an action for bad faith in
> connection with the handling of an insurance claim.

Because of the statute's express terms, Sell, as assignee of D'hont's

first-party claim, may not bring a common law bad faith action related

to insurance claim handling.  MCA § 33-18-242(3); *see also Brewington v.*

*Employers Fire Ins. Co., 992 P.2d 237, 240 (Mont. 1999)*[1]; *Burton v. State Farm Mut. Automobile Ins. Co., 30 M.F.R. 173, 179-83 (D. Mont. Aug. 28, 2002), reversed on other grounds 105 Fed. Appx. 154 (9th Cir. 2004).* Thus, American Family's summary judgment motion should be granted, but only with respect to Sell's first-party common law bad faith claim.

### B.   American Family's Argument that No Evidence Exists that Sell Offered to Settle the Underlying Case Within Policy Limits Thus Precluding Her First-Party Claim

The Court concludes that summary judgment is not appropriate with respect to Count II based on American Family's argument that Sell failed to offer to settle the underlying case within policy limits. Genuine issues of material fact exist that preclude a determination, as a matter of law, that Sell failed to "indicate a willingness to settle within the limits of the policy" as American Family argues. *See Court Doc. 22 at 9.*

Sell has submitted evidence from which a reasonable factfinder could conclude that she offered to settle the underlying case for policy limits and to provide a release. *See, e.g., Court Doc. 29 at Ex. B* (letter of

---

[1]Although the Montana Supreme Court in *Brewington* was addressing whether MCA § 33-18-242 prohibits a third-party claimant from bringing a common law bad faith action, it made clear that the statute prohibits an insured (i.e., a first party) from bringing an action for bad faith.

October 16, 2007, in which Lemke wrote "we have agreed to extend our demand for policy limits for two additional weeks, allowing a response up to October 30[th], by 4:30 p.m. Mountain Standard Time.") (emphasis omitted); *id. at Ex. C* (October 30, 2007, note of American Family claim adjuster recounting conversation with Lemke's paralegal advising that policy's bodily injury limits were "100/300"); *id. at Ex. D* (November 26, 2007, letter from Lemke to American Family stating "[t]his is our last effort to amicably resolve this claim for your policy limits" and asking American Family to "send your check and release into our office so that this matter can be resolved amicably"); *id. at Ex. E* (December 12, 2007, communication from Lemke's office to American Family's claim adjuster who noted that Lemke's office "indicated they expect an offer of policy limits" that day); *id. at Ex. F* (December 17, 2007, telephone message from Lemke to American Family's claim adjuster advising that if American Family did "not respond with policy limits of $100,000" in two days, Sell would file a lawsuit and Sell, at that point, would "not consider resolving [the] claim"); and *id. at Ex. G* (December 17, 2007, letter from Lemke to American Family stating that American Family had failed timely to respond to Sell's settlement demand and had given

-18-

up its "opportunity to resolve this claim within your insured's policy limit").

Based on the foregoing, the Court concludes that summary judgment with respect to Count II should be denied to the extent the motion relies on the argument that Sell never offered to settle the underlying claim within policy limits. *14 COUCH ON INSURANCE 3D §§ 203:6* ("Unless reasonable minds could not differ, the issue of whether an insurer acted ... in bad faith in failing to settle a claim against the insured within policy limits is generally a question of fact based upon the circumstances and particular facts of each case.") (internal citations omitted), *203:18* ("Any doubt as to whether the insurer had the opportunity to settle within the face amount of the policy .... should be resolved in favor of the insured....).

C.   **American Family's Argument that Sell's Covenant Not to Execute on the Stipulated Judgment Effectively Released D'hont and Thus Released American Family**

American Family argues that "the stipulated judgment issued by [the state court] is not a cognizable basis for damages but is, in essence, a release." *Court Doc. 22 at 3.* Otherwise stated, American Family argues that a "judgment combined with a covenant not to execute is

worthless and, therefore, Sell received nothing from D'hont of any value worth pursuing." *Id. at 11.* In analyzing these arguments, it must be remembered that the question now before the Court is not whether the stipulated judgment is binding on American Family; nor is the question before the Court whether Sell should prevail on her assigned claim. On this motion for summary judgment on Count II, the question is whether there is an absence of genuine issues of material fact and whether American Family should prevail as a matter of law.

As noted above, D'hont consented to judgment in the underlying state case in the amount of $250,000 in Sell's favor. *Court Doc. 4 at ¶ 14; Court Doc. 23 at ¶ 19.* After a hearing, the state court determined that the judgment was reasonable and entered judgment against D'hont in the amount of $250,000. *Court Doc. 4 at ¶ 15; Court Doc. 23 at ¶¶ 21-22.* In addition, D'hont assigned all first-party rights under the American Family policy to Sell. In exchange, Sell entered into a covenant not to execute against D'hont personally. *Court Doc. 4 at ¶ 14; Court Doc. 23 at ¶ 19.* This covenant was executed over three years after the automobile accident and over two months after American Family had issued its fourth check for the remaining policy limits on the

claim.

The agreement between Sell and D'hont provides in relevant part

that:

> [Sell and D'hont] stipulate to a judgment in the amount of ...
> ($250,000), $100,000 of which has already been paid upon the
> tender of the applicable liability policy limit, as set forth
> below in exchange for a covenant not to execute against
> [D'hont] pertaining to injuries received as a result of the
> November 27, 2005 automobile accident described in [Sell's]
> Amended Complaint, saving and excepting from such release
> any claims, including bad faith claims, which [Sell] may have
> against American Family Insurance Group.
>
> *     *     *
>
> ... D'hont hereby assigns to Marlys Sell all of his first party
> rights, demands, actions, claims and contractual rights
> against American Family Insurance Group ....
>
> *     *     *
>
> ... [Sell] and her attorney agree to release and indemnify
> [D'hont] from any and all claims, actions, causes of action,
> demands, damages or liens, whether asserted or unasserted,
> known or unknown, foreseen or unforeseen, including but not
> limited to claims for subrogation, statutory or common law
> liens, attorney's liens or liens claimed by any health care
> provider.
>
> *     *     *
>
> [Sell] shall present this matter to the Court and request a hearing
> to determine the damages are reasonable and there is no claim of

collusion between the parties.

*Court Doc. 23-9 at 1-3 (¶¶ 1, 2, 3, 6, and 10).*[2]

The covenant not to execute that Sell entered in D'hont's favor

provides, in pertinent part:

> ... [Sell] ... covenants and agrees she shall not, either now or
> at any time in the future, either directly or indirectly,
> execute upon or attempt to execute upon, levy upon or
> attempt to levy upon or otherwise seek to acquire or attempt
> to acquire any interest in any of [the] assets or property now
> owned or possessed, or otherwise acquired at any time in the
> future by [D'hont] to satisfy, or in an attempt to satisfy, the
> Stipulated Judgment previously filed herein.  This Covenant
> Not to Execute shall in no way prohibit or be construed to
> prohibit the undersigned, directly or indirectly, from
> executing upon the insurance policy issued by American
> Family Insurance Group that offers defense and/or coverage
> obligations for the claims described in the Stipulated
> Judgment filed herein.

*Court Doc. 23-9 at 10-11.*[3]

The parties cite to no Montana Supreme Court decision directly

---

[2]Neither party asserts that paragraph 8 of the agreement, captioned "Agreement to Release and Hold Matthew Edward D'Hont Harmless From Liens", contains a general release of D'Hont by Sell.

[3]The copy of this Covenant Not to Execute filed as a exhibit in this case is neither signed nor dated.  No party has challenged its authenticity or use herein.  Thus, the Court assumes that its use is proper for purposes of deciding the motion at hand.

addressing American Family's argument that a stipulated judgment coupled with a covenant not to execute is the functional equivalent of a release of the insured and the insurer.  The Court's own research also revealed no Montana decisions addressing the argument.  Thus, the Court, sitting in diversity, must predict how the Montana Supreme Court would rule if faced with the question under the circumstances presented here.  *Hannon v. Avis Rent a Car System, Inc., 107 F.Supp.2d 1256, 1261 n.5 (D. Mont. 2000).*

Although the Montana Supreme Court has not ruled on this issue, research reveals that the court has found coverage in the presence of such assignments.  See *Farmers Union Mutual Ins. Co., v. Staples, 99 P.3d 381 (Mont. 2004) (court held that insurer had breached its duty to defend after insured confessed judgment and assigned rights under the policy in exchange for covenant not to execute); Truck Ins. Exchange v. Woldstad, 687 P.2d 1022 (Mont. 1984) (insurer ordered to pay consent judgment coupled with a covenant not to execute).*   In other cases, the Montana Supreme Court has noted the existence of such agreements and proceeded to consider claims regarding the terms of the insurance policy.  *See, e.g., Farmers Union Mutual Ins. Co. v. Rumph, 170 P.3d*

*934, 936 (Mont. 2007); Shaw v. Allstate Ins. Co., 120 P.3d 810 (Mont. 2005); Heggen v. Mountain West Farm Bureau Mutual Ins. Co., 715 P.2d 1060, 1061 (Mont. 1986).*

In another context, the Montana Supreme Court recently held that an insurer could be held liable for excess amounts over policy limits although the insured's assets were not at risk.  In *Goettel v. Estate of Ballard, 2010 WL 2512349 (Mont.)*, Goettel, an injured motorist, asserted a claim against the tortfeasor's estate.  The tortfeasor's insurer, as in this case, had refused to pay policy limits but later offered the balance of limits.  Goettel wished to assert a claim against the insurer for excess coverage, but acknowledged that he could not collect any portion of a judgment from the tortfeasor's estate because he did not file a claim against the estate within the one-year statutory time period for filing claims as provided in MCA § 72-3-803(1)(a).  Goettel argued that this statutory prohibition should not alter the duties of insurers, and the penalty imposed against insurers for failing to attempt to effectuate a prompt and reasonable settlement when liability is reasonably clear under the Unfair Trade Practices Act, MCA § 33-18-201.  The supreme court agreed, concluding that the insurer could be held liable for an

-24-

excess judgment even though no claim could be asserted against the insured's asserts. *Id. at ¶¶ 26-28.*

Although it has not had occasion to rule on this issue as presented here by American Family, this Court also has given effect to an insured's assignment coupled with a covenant not to execute. In *Nielsen v. TIG Insur. Co., 442 F.Supp.2d 972, 978 (D.Mont. 2006),* the Court found an insurer liable for the full amount of an underlying judgment that exceeded policy limits where the claim was brought by the assignee of an insured.

Courts in other jurisdictions that have considered this issue have done so in varying contexts. The courts have considered whether there was a refusal to defend the insured, whether there was a reservation of rights or other coverage challenge by the insurer, whether the assignment occurred before or after the underlying trial, and whether the assignment was coupled with a release or with a covenant not to execute. Even factoring in these varying contexts, the Court concludes that a split of authority exists with respect to the legal effect of "an assignment, coupled with an agreement, releasing a tortfeasor from liability, when an insurer has failed to settle a claim within policy limits

-25-

and judgment enters against the insured in excess of those limits."
*Associated Insurance Service, Inc. v. Garcia*, 307 S.W.3d 58, 64 (Ky.
2010) ("*Associated Insurance*") (quoting *Campione v. Wilson*, 661 N.E.2d
658, 661-62 (Mass. 1996)).  Recently, in *Associated Insurance*, a case
involving, *inter alia*, a claim for negligence in the procurement of
insurance, the Supreme Court of Kentucky summarized the competing
views on this issue under similar, though not identical, circumstances,
as follows:

> A minority of jurisdictions has concluded that insured
> tortfeasors, who are protected by a covenant not to execute
> and a stipulated judgment, have no obligation to pay
> anything to the injured party and, thus, the insurer would
> have no duty to pay under the policy.  In these jurisdictions,
> the [insurer] cannot be held liable for any alleged negligence,
> as the insured has suffered no actual damage.  These courts
> focus on language in the insurance policy regarding sums
> which the insurer has become legally obligated to pay.
>
> *      *      *
>
> However, the majority of courts considering this issue have
> concluded that such assignments are valid.  The focus of their
> analysis is on the nature of the agreement, drawing a
> distinction between a covenant not to execute and a release.
> In these jurisdictions, an assignment is valid if it is coupled
> with a covenant not to execute because the insured remains
> liable for the excess judgment; an assignment coupled with a
> release is void because the release extinguishes the insured's
> liability.  Where liability is not completely extinguished, the

-26-

> assignment is valid because the tortfeasor is still subject to
> some amount of liability.

*Associated Insurance, 307 S.W.3d at 65-66 (citations and internal*

*quotations omitted) (collecting cases for both minority and majority*

*positions).*

Other reasons for the conclusion reached by the majority of courts,

as noted by the court in *Associated Insurance*, include: (1) "the practical

value of these types of arrangements" because they provide a remedy to

the injured party as well as the tortfeasor who has been negligently

denied adequate insurance coverage[,]" *id. at 66 (citing Kobbeman v.*

*Oleson, 574 N.W.2d 633, 637 (S.D. 1998))*; (2) these arrangements

"promote the timely resolution of claims[,]" *id. (citing Campione, 661*

*N.E.2d at 663* ("It is appropriate to give effect to agreements which have

led to a carefully negotiated and detailed settlement, in which the

plaintiffs have voluntarily assumed the burden of proving any claims

that [the tortfeasor] might have against the [insurer]")); (3) fairness

dictates allowance of these types of arrangements because an insurer's

wrongful conduct, if true, "brings about the circumstances necessitating

the settlement agreement and the tortfeasor's attempts to protect itself.

Invalidation of the assignment would only inure to the benefit of the ... [insurer], certainly an unjust result[,]" *id. (citing Esposito v. CPM Ins. Services, Inc., 922 A.2d 343, 352 (Conn. Super. Ct. 2006))*; and (4) the argument against allowing such arrangements on the grounds that they are "inherently collusive or otherwise against public policy" is misplaced because "the assignee will still be required to prove the [insurer's wrongdoing] at a trial of the assigned claim[,]" *id. (citing Red Giant Oil Co. v. Lawlor, 528 N.W.2d 5234, 533 (Iowa 1995))*.

The Supreme Judicial Court of Massachusetts, in *Campione*, *supra*, aptly elaborated on the split of opinion in cases addressing the issue as follows:

> For the most part, these conflicting decisions reflect a balancing of policy considerations. The primary rationale of the Eighth Circuit's *Freeman* decision is concern about the risk of collusion when an insured is protected from liability by an agreement not to execute prior to entry of judgment. In these circumstances, the court observed, "the insured ... loses the incentive to contest his liability or the extent of the injured party's damages either in negotiations or at trial." *Freeman v. Schmidt Real Estate & Ins., Inc. [v. Schmidt Real Estate & Ins. Co. v. Gibson, 755 F.2d 135, 139 (8th Cir. 1985)]*. This risk, the court concluded, outweighed the possible benefit of the use of a settlement like the one entered into by the parties. *See Gray v. Grain Dealers Mut. Ins. Co., [871 F.2d 1128, 1133 (D.C. Cir. 1989)]* (consideration motivating decision in *Freeman* case is fear of collusion between insured

-28-

and injured party).  On the other hand, in the *Gray* decision,
the United States Court of Appeals for the District of
Columbia Circuit rejected the risk of collusion as a basis for
decision.  The court reasoned that, when the insurance
policy, the assignment, and the release executed by the
parties were considered together, the assignment was
effective under North Carolina law.  *Id. at 1133.*  The court
was not particularly impressed with what it termed the
"somewhat metaphysical contention," *id. at 1132*, that the
legal basis for the claim against the insurer disappeared
when the insured became insulated from liability due to a
release or a covenant not to execute.  *Id. at 1133.*  In the
circumstances of this case, we consider the reasoning of the
*Gray* decision to be more persuasive, and we discern no
compelling reason not to recognize the assignment of the
negligence claims.

*Campione, 661 N.E.2d at 662.*

This Court, too, is more persuaded by the rationale of those courts

following the majority rule that entry of a stipulated judgment in excess

of policy limits coupled with a covenant not to execute in favor of the

insured does not invalidate an accompanying assignment of the

insured's right to sue the insurer.[4]

---

[4]For purposes of this motion, American Family assumes, without
conceding,  that D'hont's rights can be lawfully assigned. *Court Doc. 22 at
4.*  Yet American Family distinguishes many of the cases cited above
because here the insurer was providing a defense and was not disputing
coverage under the policy at the time D'hont assigned his rights to Sell in
return for a covenant not to execute.  These arguments, however, appear
to be more pertinent to fact issues regarding the strength of the assigned

First, the agreement between Sell and D'hont supports application
of the majority rule.  D'hont assigned to Sell "all of his first party ...
claims" against American Family and Sell expressly reserved in the
agreement she made with D'hont any claims against American Family
including those under the UTPA.  *Court Doc. 23-9 at 1-3.*  Although Sell
agreed not to execute upon D'hont's assets or property under the
agreement, Sell and D'hont also expressed that the agreement "shall in
no way prohibit or be construed to prohibit [Sell], directly or indirectly,
from executing upon the insurance policy issued by American Family ...."
*Court Doc. 23-9 at 10.*

Second, the Court agrees with those decisions that recognize the
practical value of the type of arrangement between Sell and D'hont.
Such agreements provide the injured party and the insured with some
relief that may otherwise have been wrongfully delayed or denied by an
insurer.  They also reflect what is likely "a carefully negotiated and
detailed settlement" in which the injured party "voluntarily assume[s]
the burden of proving any claims that [the tortfeasor] might have

_____

claim than to whether the claim can proceed.

against the [insurer]." *Campione, 661 N.E.2d at 663.*

Third, these types of agreements promote fairness in the proceedings. If an insurer has engaged in conduct that violates the UTPA, one could reasonably argue that the insurer made it necessary for the injured party and the insured to enter into an agreement so that the injured party could obtain relief and the insured could attempt to protect itself. It would produce an unjust result to allow an insurer to benefit through invalidation of an such an agreement between the injured party and the insured.

Fourth, in support of its summary judgment motion, American Family has neither argued nor presented evidence that the agreement between Sell and D'hont was collusive or otherwise improper. Rather, American Family has argued only that their arrangement constitutes a release that inures to American Family's benefit as a matter of law. As noted above, this argument fails in light of the majority rule examined herein.

Fifth, D'hont assigned to Sell not only the claim to enforce the excess judgment, but more broadly "all of his first party rights, demands, actions, claims and contractual rights against American

Family...."  *Court Doc. 23-9 at 2, ¶ 3.*  D'hont's claims against American

Family are not limited to indemnity for Sell's claims against him.  Thus,

American Family has not shown a complete absence of material fact

with respect to damages.

For the foregoing reasons, the Court concludes that summary

judgment on Count II is not appropriate based on American Family's

argument that the agreement between Sell and D'hont effectively

released American Family from liability for Sell's assigned first-party

claim as a matter of law.

## V.    <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that American

Family's Motion for Partial Summary Judgment as to Count II (Court

Doc. 21) be GRANTED only with respect to Sell's first-party common

law bad faith claim and DENIED in all other respects.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall

serve a copy of the Findings and Recommendation of United States

Magistrate Judge upon the parties.  The parties are advised that

pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation must be filed with the Clerk of Court and copies served

on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.

DATED this 10th day of August, 2010.

**/S/ Carolyn S. Ostby**
United States Magistrate Judge